UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

MICHAEL TURNER,

                        Plaintiff,

     -against-

THE CITY OF NEW YORK, Correctional Officer "JOHN" ALEXIS, Shield No. Unknown, Correctional Captain "JOHN" SAINT PIERRE, Shield No. Unknown, Correctional Officer "JOHN" FADINA, Shield No. Unknown, Correctional Officers JOHN DOE # 4 THROUGH 10, in their individual and official capacities as employees of the City of New York,

                        Defendants.
----------------------------------------------------------- X

FIRST AMENDED COMPLAINT
Jury Trial Demanded

16-787 (MKB)(RER)

## NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution of the United States.

## JURISDICTION AND VENUE

2. This is a civil rights action for money damages brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1988, the Fourth, Fifth and Fourteenth Amendments of the United States Constitution against defendants mentioned above and against the City of New York. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

## VENUE

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a) (b) and (c).

## JURY DEMAND

4. Plaintiff demands a trial by jury in this action.

## PARTIES

5. Plaintiff at all times relevant hereto resided in the City and State of New York.

6. That at all times hereinafter mentioned, and upon information and belief, the defendant City of New York, was at all times relevant hereto, a municipal corporation duly organized and existing pursuant to the laws, statutes and charters of the State of New York.

7. The New York City Department of Correction was at all times relevant hereto, an agency of the defendant City of New York.

8. That at all times hereafter mentioned, and on information and belief, defendant Correctional Officer "JOHN" ALEXIS, Shield No. Unknown, was at all times relevant hereto, an employee of the defendant City of New York, employed as a correctional officer by the New York City Department of Correction. He is sued in his individual and official capacities.

9. Defendant Correction Officer ALEXIS, at all relevant times herein, either directly participated or failed to intervene to stop the assaults upon plaintiff.

10. That at all times hereafter mentioned, and on information and belief, defendant Correctional Captain "JOHN" SAINT PIERRE, Shield No. Unknown, was at all times relevant hereto, an employee of the defendant City of New York, employed as a correctional officer by the New York City Department of Correction. He is sued in his individual and official capacities.

11. Defendant Correction Officer SAINT PIERRE, at all relevant times herein, either directly participated or failed to intervene to stop the assaults upon plaintiff.

12. That at all times hereafter mentioned, and on information and belief, defendant Correctional Captain "JOHN" FADINA, Shield No. Unknown, was at all times relevant hereto, an employee of the defendant City of New York, employed as a correctional officer by the New York City Department of Correction. He is sued in his individual and official capacities.

13. Defendant Correction Officer FADINA, at all relevant times herein, either directly participated or failed to intervene to stop the assaults upon plaintiff.

14. That at all times hereinafter mentioned, and on information and belief, the defendant correctional officers JOHN DOE # 4 through 10 were at all times relevant hereto, employees of the defendant City of New York, employed as correctional officers employed by the New York City

Department of Correction. Said defendants are sued in their individual and official capacities.

15. Defendant correctional officers, JOHN DOE # 4 through 10 at all relevant times herein, either directly participated or failed to intervene to stop the assault upon plaintiff.

16. At all times mentioned herein, defendant JOHN DOE # 4 through 10 were acting under color of state and local laws, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the City of New York and the State of New York.

17. That at all times hereinafter mentioned, and upon information and belief, the individual defendants are named herein both personally and in their official representative capacities as correctional officers employed by the defendant City of New York through its agency, the New York City Department of Correction and that each and all of the acts of the individual defendants alleged herein were done by the individual defendants and each of them under cover and pretense of the statutes and laws of the State of New York, and under and by virtue of their authority as officers and employees of defendant, the City of New York.

**STATEMENT OF FACTS**

**A History of Excessive Force in New York City Jails**

18.     In August of 2014, the United States Attorney's Office issued a shocking report, exposing the DOC for deplorable conditions in New York City Jails, including of course the DOC's culture of excessive use of force by staff against inmates. In fact, for decades, through Department reports and civil litigation, DOC has been aware of the routine, dangerous, and unconstitutional use of excessive force by staff at individual facilities in the New York City Department of Correction. *See, e.g., Fisher v. Koehler*, 692 F. Supp. 1519 (S.D.N.Y. 1988), *injunction entered*, 718 F. Supp. 1111 (1989), *aff'd*, 902 F.2d 2 (2d Cir. 1990) [Correction Institution for Men]; *Jackson v. Montemagno*, CV 85-2384 (AS) (E.D.N.Y.) [Brooklyn House of Detention]; *Reynolds v. Ward*, 81 Civ. 101 (PNL) (S.D.N.Y.) [Bellevue Prison Psychiatric Ward]; *Sheppard v. Phoenix*, 91 Civ. 4148 (RPP) (S.D.N.Y.) [Central Punitive Segregation Unit].

19.     For example, *Sheppard v. Phoenix*, 210 F. Supp. 2d 250 (S.D.N.Y. 1998) (terminating injunction), was a class action that concerned the City's Central Punitive Segregation Unit (CPSU). That litigation unearthed abuse of prisoners and cover-ups sufficiently serious to merit criminal prosecution.

20.     *Ingles v. Toro*, 438 F. Supp. 2d 203 (S.D.N.Y. 2006) (approving stipulation of settlement), was a system-wide class action

5

challenging the pervasive practice of using excessive force against inmates incarcerated in New York City's jails. This litigation revealed significant numbers of credible excessive force complaints from prisoners who had been seriously injured by staff in the City jails. The settlement of this class action was intended to provide meaningful improvements in the training, practice, and supervision of agency staff and investigators, and changes in the Department's use of force policy.

21. Since 2002, senior supervisors and uniformed staff in the DOC have been sued repeatedly by inmates alleging staff beatings. Many of these cases, all resulting in favorable judgments for plaintiffs following settlement, include remarkably similar allegations of misconduct. See:

- Reynolds v. City of New York, No. 11 Civ. 621 (S.D.N.Y.) (alleging beat-up in George Motchan Detention Center ("GMDC") resulting in shoulder fracture and loss of consciousness; settled for $200,500);

- Mull v. City of New York, No. 08 Civ. 8854 (S.D.N.Y.) (alleging beat-up in AMKC resulting in diffuse axonal injury to brain, partial loss of eyesight, and partial loss of hearing, and requiring the victim to take seizure medications; settled for $550,000);

- Belvett v. City of New York, No. 09 Civ. 8090 (S.D.N.Y.) (alleging beat-ups at GMDC and Robert N. Davoren Center ("RNDC") resulting in facial fracture; settled for $350,000);

6

- Youngblood v. Baldwin, No. 08 Civ. 5982 (S.D.N.Y.) (alleging beat-up at GRVC resulting in skull laceration and broken nose; settled for $240,000);

- Williams v. City of New York, No. 07 Civ. 11055 (S.D.N.Y.) (alleging beat-up in Otis Bantum Correctional Center ("OBCC") resulting in fractured jaw and facial bones and torn earlobe; settled for $202,500);

- Williams v. City of New York, No. 09 Civ. 5734 (S.D.N.Y.) (alleging beat-up in RNDC resulting in laceration to head; settled for $87,500);

- Lee v. Perez, No. 09 Civ. 3134 (S.D.N.Y.) (alleging beat-up at North Infirmary Command ("NIC") resulting in multiple rib fractures, a spinal fracture and a collapsed lung; settled for $300,000);

- Shuford v. City of New York, No. 09 Civ. 945 (S.D.N.Y.) (alleging two beat-ups at RNDC resulting in facial fractures; settled for $375,000);

- Diaz v. City of New York, No. 08 Civ. 4391 (S.D.N.Y.) (alleging beat-ups involving two inmates, one at AMKC and one at OBCC; settled for $400,000 and $450,000, respectively);

- Lugo v. City of New York, No. 08 Civ. 2931 (S.D.N.Y.) (alleging beat-up at NIC resulting in orbital fracture; settled for $185,000);

7

- Cuadrado v. City of New York, No. 07 Civ. 1447 (S.D.N.Y.) (alleging beat-up at RNDC resulting in punctured lung; settled for $175,000);

- Scott v. City of New York, No. 07 Civ. 3691 (S.D.N.Y.) (alleging beat-up at GMDC resulting in orbital fracture; settled for $175,000);

- Pischeottola v. City of New York, No. 06 Civ. 2505 (S.D.N.Y.) (alleging beat-up at RNDC resulting in punctured lung requiring chest tube; settled for $150,000);

- Rice v. N.Y.C. D.O.C., No. 03 Civ. 582 (S.D.N.Y.) (alleging beat-ups of two inmates at GRVC resulting in collapsed lung and contusion hematomas in one case, and in neck and spinal cord injuries causing permanent stutter in the other; settled for $255,000 and $590,000, respectively);

- Joseph v. N.Y.C. D.O.C., No. 02 Civ. 9219 (S.D.N.Y.) (alleging beat-up at GRVC resulting in orbital fracture; settled for $375,000).

22. Additionally, through DOC's elaborate reporting system, the City of New York was aware of the pattern of a large number of incidents involving the use of unnecessary and/or excessive force by DOC staff members resulting in serious injuries to inmates but failed to take sufficient steps to curb these abuses.

8

23. At the time plaintiff was beaten, the City was aware of the unwillingness of the Department to investigate adequately and impose meaningful discipline against DOC staff members who use unnecessary and excessive force on prisoners, or who fail to accurately and honestly report it.

24. Through all these cases and Department reports, the City has been made aware of the widespread practice by DOC staff members of using excessive and/or unnecessary force to injure, and not restrain, inmates. They have also been made aware of the failures of DOC's Investigation Division to adequately investigate allegations of misconduct and of the refusal of the Department to bring effective disciplinary charges against its officers to promote institutional reform and protect the safety of prisoners confined in DOC custody.

25. The City cannot credibly contend that they are unaware of the pattern of abuse that occurs with regularity in New York City jails and the failure of the City to take sufficient measures to investigate and discipline this abuse.

26. The City has not taken sufficient steps to curb the abuse that occurs on a daily basis in New York City jails. Indeed, it allows that abuse to persist through inadequate investigations of allegations of misconduct and the failure to discipline officers in the face of obvious wrongdoing.

**Assault upon Plaintiff**

27.     Plaintiff is an African-American male.

28.     On or about December 2, 2013, at about 10 am, plaintiff was on his way to the chapel at the George R. Vierno Center (G.R.V.C.).

29.     Captain "JOHN" SAINT PIERRE (African-American) who at the time escorted plaintiff when the Captain became increasingly annoyed as he argued with plaintiff.

30.     Once in the chapel, Captain SAINT PIERRE called additional officers including Correctional Officer "JOHN" ALEXIS and "JOHN" FADINA and John Does 4 through 10 who surrounded plaintiff and strip-searched plaintiff.

31.     While plaintiff stood in the chapel wearing nothing but his underwear, Captain SAINT PIERRE punched plaintiff in the face while defendants ALEXIS, FADINA and John Does 4 through 10 punched and kicked plaintiff about the face and body.

32.     The defendant officers handcuffed plaintiff, threw him onto the ground, and continued kicking plaintiff.

33.     The defendant officers did this because they knew they could get away with it as the area was not under video surveillance.

34.     The defendant officers carried out this attack due to the policy and practice within the Department of Correction of officers meting

10

out punishment and excessive force on inmates based upon the whims of officers and captains.

35. Plaintiff lost consciousness.

36. Plaintiff was in severe pain and asked for medical assistance, yet he was denied medical assistance for some time.

37. Eventually plaintiff was taken to the clinic on Rikers Island where physicians determined that plaintiff had to be transported to Bellevue Hospital for further evaluation.

38. Once at Bellevue Hospital, Plaintiff was diagnosed with mandibular fracture among other injuries.

39. Plaintiff attended physical therapy at Bellevue Hospital for several months to rehabilitate his injured jaw.

40. Since the assault, plaintiff's vision deteriorated to the extent that plaintiff was prescribed eyeglasses.

41. Plaintiff's hearing has become impaired as a result of this assault.

42. Plaintiff sustained permanent disfigurement, to wit a scar on his forehead as well.

43. At no time did plaintiff assault or attempt to assault any officer, nor did he present a threat or perceived threat to the personal

safety of any officer or to the security of the jail so as to warrant such violence.

44. Plaintiff did not provoke this attack nor did he conduct himself in any manner that would warrant any use of force, much less the excessive force actually used. Defendant officers acted sadistically and maliciously and demonstrated deliberate indifference toward plaintiff's rights and physical wellbeing.

45. All of the above was done in violation of federal law.

46. Defendants employed unnecessary and unreasonable force against the plaintiff. Defendant officers acted maliciously and intentionally, and said acts are examples of gross misconduct.

47. As a direct and proximate result of the malicious and outrageous conduct of defendants set forth above, Plaintiff suffered injuries including but not limited to emotional trauma, harm and distress, mental anguish and serious physical injuries.

48. Plaintiff continues to suffer substantial pain due to the injuries he sustained.

49. The conduct of the defendant correctional officers in assaulting the plaintiff and denying him medical attention directly and proximately caused serious physical and emotional injury, pain and suffering, mental anguish, humiliation and embarrassment.

50. The events described herein have left permanent emotional scars that plaintiff will carry with him for the remainder of his life.

## COUNT ONE
## 42 U.S.C. § 1983
## Excessive Use of Force Under Fourth Amendment
## Against Individual Defendant Officers

51. The plaintiff incorporates by reference the factual allegations set forth above as if fully set forth herein.

52. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

53. The Defendants intentionally touched Plaintiff.

54. The Defendants' touching of Plaintiff involved the use of excessive physical force and caused and/or exacerbated serious injuries to Plaintiff.

55. Plaintiff did not consent to the excessive physical contact by any of the Defendants, and they lacked legal justification, excuse, or privilege for their conduct.

56. By virtue of the foregoing, the Defendants each deprived Plaintiff of his right under the Fourth Amendment to the United States Constitution to be free from the excessive use of force.

57. The Defendants each deprived Plaintiff of his rights intentionally, willfully, or recklessly, under color of law.

58. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein alleged.

### COUNT TWO
### Failure To Intervene
### Against All Individual Defendants

59. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

60. The defendants were present but failed to intervene in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

61. Accordingly, the defendants who failed to intervene violated Plaintiff's Fourth, Fifth and Fourteenth Amendments.

62. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### COUNT THREE
### Deliberate Indifference to Medical Needs
### As to all defendants

63. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

64. The individual defendants were aware of plaintiff's need for medical care and failed to act in deliberate indifference to plaintiff's needs.

14

65. Accordingly, defendants violated the Fourth and the Fourteenth Amendment because they acted with deliberate indifference to plaintiff's medical needs.

## COUNT FOUR
## Substantive Due Process/Malicious Abuse of Process
## 42 U.S.C. § 1983 (Against All Defendants)

66. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

67. The Defendants each maliciously and sadistically abused their government power in their actions toward Plaintiff.

68. These actions were of a kind likely to, and which in fact did, produce substantial injury to Plaintiff.

69. The Defendants treated Plaintiff in a manner that shocks the conscience.

70. The Defendants thus violated Plaintiff's right to substantive due process under the Fifth and Fourteenth Amendments to the United States Constitution.

71. The Defendants each deprived Plaintiff of his rights intentionally, willfully, or recklessly, under color of law.

72. As a direct and proximate result of the misconduct and

abuse of authority detailed above, Plaintiff sustained the damages herein alleged.

## COUNT FIVE
## 42 U.S.C. § 1983/Fourteenth Amendment/Monell
## (Against Defendant City)

73. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

74. Defendant City, through the DOC and officers to whom policymaking authority was delegated, and acting under the pretense and color of law, permitted, tolerated and was deliberately indifferent to a pattern and practice of staff brutality and retaliation by DOC staff at the time of plaintiff's beatings. This widespread tolerance of correction officer abuse of prisoners constituted a municipal policy, practice, or custom and led to plaintiff's repeated assaults.

75. By permitting, tolerating, and sanctioning a persistent and widespread policy, practice, and custom pursuant to which plaintiff was subjected to brutal beatings and untimely medical care, defendant City has deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed under the Fourteenth Amendment to be free from gratuitous and excessive force.

76. Defendant City had a policy, custom, or practice of failing to train and/or supervise the individually named defendants and other City employees on how to not take out their aggression on inmates.

77. These failures led directly to the violation of Plaintiff's rights. These failures led directly to the incidents that followed that led to Plaintiff being injured.

78. The City's failure to implement policies and practices and failure to train and supervise its employees resulted in the individual defendants and other City employees choosing to "discipline" inmates as they see fit through physical violence.

79. These failures led directly to the violation of Plaintiff's rights.

80. These failures led directly to the incidents that followed that led to Plaintiff being injured.

81. As a direct and proximate result of the policy, practice, and custom detailed above, plaintiff sustained the damages hereinbefore alleged.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.


DATED: July 5, 2016
Brooklyn, New York

*Amy Rameau*
_____
Amy Rameau, Esq.
The Rameau Law Firm
16 Court Street, Suite 2504
Brooklyn, NY 11241
718.852.4759
rameaulawny@gmail.com

*Attorney for plaintiff*